

# UNITED STATES DISTRICT COURT

NORTHERN ILLINOIS DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVANGELINA CAZARES, Sui Juris; ) <br> JOSUE TURCIOS, Sui Juris; ) <br> ) <br> *Plaintiff(s)* ) <br> ) <br> v. ) <br> ) <br> HALEMA A. TOWNSEND, in her individual capacity; ) <br> SHARON RICHARDSON, in her individual capacity; ) <br> CHARLOTTE ROBINSON, in her individual capacity; ) <br> MARNITA MARTIN- HARRIS, in her individual capacity; ) <br> DAVID RUANO, in his individual capacity; ) <br> LISA M. CARSWELL, in his individual capacity; ) <br> ERICK G. GONZALEZ, in his individual capacity; ) <br> KIMBERLY BURRIS, in her individual capacity; ) <br> FAYETTE COLEMAN-GILL, in her individual capacity; ) <br> JOHN L. HUFF, in his individual capacity; ) <br> SARA B. NOVY, in her individual capacity; ) <br> CHARLES P. GOLBERT, in his individual capacity; ) <br> DANIELLA SAILADES in her individual capacity; ) <br> MACARRE TIMUWARD, in her individual capacity; ) <br> STEVE ROSENTHAL, in his individual capacity; ) <br> ISAMAR MENDOZA, in her individual capacity; ) <br> GLORIA JOHNSON, in her individual capacity; ) <br> LASHAWNDA BISHIOP, in her individual capacity; ) <br> ) <br> *Defendant(s)* ) | CASE NO: 1:19-cv-07856 <br><br> CIVIL ACTION <br><br> AMENDED COMPLAINT FOR VIOLATIONS OF: <br><br> (1) 42 U.S.C. §§ 1983; <br> (2) U.S. Const. amend. IV; <br> (3) U.S. Const. amend. V; <br> (4) U.S. Const. amend. XIV, § 1; <br><br> [Jury Trial Demanded] <br><br> FILED <br><br> JAN 17 2020 <br><br> THOMAS G. BRUTON <br> CLERK, U.S. DISTRICT COURT |

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

### I. INTRODUCTION

1. COME NOW, plaintiff(s) Avangelina Cazares and Josue Turcios for their complaint against defendant(s) Halema A. Townsend, Sharon Richardson, Charlotte Robinson, Marnita Martin-

Harris, David Ruano, Lisa Carswell, Erick G. Gonzalez, Kimberly Burris, Fayette Coleman-Gill, John L. Huff, Sara B. Novy, Charles P. Golbert, Daniella Sailades, Macarre Timuward, Steve Rosenthal, Isamar Mendoza, Gloria Johnson and LaShawnda Bishop. Avangelina Cazares and Josue Turcios are suing under 42 U.S.C. §§ 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal [constitutional] and [statutory] rights under color of state law. The plaintiff(s) state as follows:

## II. NATURE OF THE ACTION

2. This is an action for relief from a violation of constitutional rights brought pursuant to 42 U.S.C. §§ 1983, U.S. Const. amend. IV, U.S. Const. amend. V, U.S. Const. amend. XIV, § 1, and under the law of the State of Illinois.

3. Plaintiff(s) Avangelina Cazares and Josue Turcios (collectively. "Plaintiffs") allege that Defendant(s) Halema A. Townsend, Sharon Richardson, Charlotte Robinson, Marnita Martin-Harris, David Ruano, Lisa Carswell, Erick G. Gonzalez, Kimberly Burris, Fayette Coleman-Gill, Daniella Sailades, John L. Huff, Sara B. Novy, Charles P. Golbert, Macarre Timuward, Steve Rosenthal, Isamar Mendoza, Gloria Johnson and LaShawnda Bishop (collectively, "Defendants"), unlawfully violated their constitutional rights.

4. Plaintiff(s) seek injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, and reasonable attorneys' fees and costs as remedies for Defendant(s) violations of their rights.

## III. THE PARTIES

5. Plaintiff Avangelina Cazares is the mother of P.T., A.T., and C.T. who resides at 714. W. 95th Street Chicago, IL and is a resident of Cook County.

6. Plaintiff Josue Turcios is the father of C.T who resides at 714. W. 95th Street Chicago, IL and is a resident of Cook County.

7. Defendant Halema A. Townsend is a Child Protection Specialist for The State of Illinois, Department of Children and Family Services.

8. Defendant Sharon Richardson is a Public Service Administrator for The State of Illinois, Department of Children and Family Services.

9. Defendant Charlotte Robinson is a Senior Public Service Administrator for The State of Illinois, Department of Children and Family Services.

10. Defendant Marnita Martin-Harris is a Senior Public Service Administrator for The State of Illinois, Department of Children and Family Services.

11. Defendant David Ruano is a Child Protection Specialist for The State of Illinois, Department of Children and Family Services.

12. Defendant Lisa Carswell is a Public Service Administrator for The State of Illinois, Department of Children and Family Services.

13. Defendant Erick G. Gonzalez is a Child Welfare Specialist for The State of Illinois, Department of Children and Family Services.

14. Defendant Kimberly Burris is a Public Service Administrator for The State of Illinois, Department of Children and Family Services.

15. Defendant Fayette Coleman-Gill is a Senior Public Service Administrator for The State of Illinois, Department of Children and Family Services.

16. Defendant Daniella Sailades is an Assistant State's Attorney for The State of Illinois, Department of Children and Family Services.

17. Defendant John L. Huff is an Associate Judge for The State of Illinois, Circuit Court of Cook County; Child Protection Division of the Juvenile Justice and Child Protection Department.

18. Defendant Sara B. Novy is an Assistant Public Guardian, for The State of Illinois, Circuit Court of Cook County; Child Protection Division of the Juvenile Justice and Child Protection Department.

19. Defendant Charles P. Golbert is the Public Guardian for The State of Illinois, for The State of Illinois, Circuit Court of Cook County; Child Protection Division of the Juvenile Justice and Child Protection Department.

20. Defendant Macarre Timuward is an Assistant State's Attorney for The State of Illinois, Circuit Court of Cook County; Child Protection Division of the Juvenile Justice and Child Protection Department.

21. Defendant Steve Rosenthal is a Certified Alcohol and Drug Counselor and Co-Occurring Substance Use and Mental Health Disorder Professional for Caritas.

22. Defendant Isamar Mendoza is a Licensed Clinical Social Worker for La Rabida Children's Hospital.

23. Defendant Gloria Johnson is a Visitation Monitor for Passages Alternative Living Programs, Inc.

24. Defendant LaShawnda Bishop is the school principal at Rudyard Kipling elementary school for the Chicago Public School district #299.

### IV. JURISTICTION AND VENUE

25. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. §§ 1343 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over plaintiff's causes of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

26. Venue lies in the United States District Court for the Northern District of Illinois, Eastern Division because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Cook County Chicago, Illinois. 28 U.S.C. § 1391(b)(2).

27. Divisional venue is in the Eastern Division because the events leading to the claim for relief arose in Cook County, Illinois.

## V. DECLARATION OF FACTS

28. On April, 30th 2019 at about 12:30pm; Halema A. Townsend visited the residence of the Plaintiff(s) at 714 W. 95th Street to investigate an "anonymous" hotline call that was months later determined to be German Tello the father of P.T. and A.T. who resided in Kentucky at the time of the call. "Avangelina" opened the door and "Halema" told her if she did not cooperate with the investigation then the families Medicaid benefits would be terminated the same day. "Halema" did not provide photo identification to "Avangelina" to prove she was employed by DCFS. The minors P.T. and A.T. were in school and "Avangelina" told "Halema" to reschedule. "Jose Turcios" was not home and C.T. was in the home with "Avangelina". The allegations that "Halema" briefly read to "Avangelina" assumed the plaintiff(s) had mental disabilities due to alcohol substance abuse and mental impairments. "Avangelina" denied those allegations and found the call to be absurd considering "Avangelina" and "Josue" were not mentally impaired and did not engage in alcohol substance abuse behaviors. The allegations further claimed "Avangelina" and "Josue" blame their aggression on their Irish genetics. "Halema" refused to reschedule and "Avangelina" expressed she did not want to experience discrimination and denied the allegations. "Halema" insisted that she come back to the house the same day to interview the minors. "Avangelina" told "Halema" the minors were not injured and if they were the school would have reported it by now. "Halema" asked is there another place for the minors to go? "Avangelina" asked

what reason would the minors need to go somewhere else? "Halema" did not explain the reasoning for the questions and said she is only reading the questions on the paper she was holding. "Avangelina felt uncomfortable and said she is going to call the police to witness the absurdity of the home visit. When "Avangelina" went to reach for her cell phone "Halema" stepped past the front door area and began searching "Avangelina's" home. "Halema" took pictures of the living room and claimed the home environment was neglectful in retaliation to "Avangelina" request to not experience discrimination. The Chicago Police arrived to the home and seen the home environment and determined there was working utilities, food, bedrooms and newer appliances. "Halema" attempted to persuade the officers that the minors were sleeping on the living room floor because she had seen a mattress in the living room. There was some unfolded laundry, and home projects in progress, however the home was not squalid. One of the two officers commented that "Halema" and her supervisor were bad apples. The officers were not persuaded by "Halema's" accusations that the home environment was neglectful and claimed they had seen much worse. "Halema" left the premise at approximately 2pm and did not provide "Avangelina" with any paperwork. "Halema" did not go to the children's school later that day to conduct an emergency interview.

29. On May 1st, 2019 "Halema" went to the children's school and interviewed the minors from the school at approximately 12pm during their lunch hours. At approximately 2pm "Sharon Richardson" spoke with "Avangelina" and asked if the kids can go somewhere else. "Avangelina" asked for what reason and "Sharon" said it was an emergency and abruptly ended the call. "Avangelina" called "Charlotte Robinson" to inquire about the nature of the request to remove the minors if they were not abused or neglected. "Charlotte" said that "Sharon" was trying to implement a safety plan and wanted "Avangelina" to sign one.

"Charlotte" said she would call "Avangelina" back and never did. At the end of the school day at approximately 3pm the minors were removed from the school and taken to the hospital for a medical evaluation. Approximately 24 hours had elapsed since "Halema" went to the residence and approximately 3 hours had elapsed since the minors were interviewed and then removed from the school. "Avangelina" called the school and asked her why the kids were picked up from the school. At approximately 3:45pm the school principal "LaShawnda Bishop" returned "Avangelina's" call and told her the CPI worker "Halema" took the minors to the grandparents. "Halema" told the school principal it was an emergency and she could not get a hold of "Avangelina" therefore "Halema" had to pick up the kids from the school. "Avangelina" provided "LaShawnda" with an alternative contact phone number in the previous month of April. "LaShawnda" did not make any attempts to notify "Avangelina" that the minors were interviewed or that protective custody was taken.

30. On May 2nd, 2019; "Sharon" emailed "Avangelina" a notice of shelter care hearing for the minors P.T. and A.T., but not for C.T. There was no notice that "Josue" was required to be present at any hearing for P.T, A.T. and C.T. Neither of the plaintiff(s) were summoned to court with the notice of shelter care hearing via service of process. David Ruano took protective custody of the minors when "Avangelina" requested the minors to return to her via a court order. David's supervisor is Lisa Carswell.

31. Marnita Martin-Harris consented to medical care for the minors before a judicial hearing and without legal authority to consent to medical care and without parental consent.

32. On May 3rd, 2019; "Halema" submitted documents to support the request to remove the minors from the home. The affidavit alleged that reasonable efforts were not made and no services were rendered by DCFS. The plaintiff(s) were never summoned in court and served with a copy of the petition to have an opportunity to be informed of the allegations. "John L.

Huff" continued the temporary custody hearing for P.T. and A.T., however spontaneously conducted a hearing for C.T. absent reasonable notification for "Josue" to be present. "John" ordered a warrant for C.T. absent a fair hearing and notification. "Daniella Sailades" is the responsible official for screening the case into the child protection division.

33. On May 10th, 2019; "Josue" was denied a re-hearing for C.T. and "John" claimed that "Josue" was notified of the hearing.

34. Erick Gonzalez is the placement caseworker; Kimberly Burris is his supervisor and Fayette Coleman-Gill is the manager.

35. Sara B. Novy is the guardian ad litem for the minors and Charles P. Golbert is the public guardian for the minors. Neither party filed a motion to terminate reasonable efforts prior to the minors being removed.

36. Macarre Timuward unlawfully requested "Josue" and "Avangelina's" medical, mental health, and substance abuse records.

37. Steve Rosenthal is the substance abuse counselor for the JCAP at 1100 S. Hamilton and conspired with Erick G. Gonzalez to force "Josue" to unlawfully complete unnecessary substance abuse services where he was in fact not an eligible candidate with a DSM5 substance abuse disorder.

38. Isamar Mendoza is the clinical social worker whom is responsible for the integrated assessment and conspired with Erick G. Gonzalez to unlawfully deprive "Avangelina" of visitation with her minors and recommend involuntary services.

39. Gloria Johnson is the visitation specialist whom is responsible for conspiring with "Erick" to deprive "Avangelina" of a video chat conference during a visitation between "Josue" and C.T. "Josue" video conferenced C.T. with "Avangelina".

## VI. FACTUAL ALLEGATIONS

40. Halema Townsend acted under color of state law. While acting under color of state law, Halema Townsend deprived Avangelina Cazares and Josue Turcios of a federal constitutional right to life, liberty, or property, without due process of law. "Halema" acted under Illinois state law 325 ILCS 5/8.2, 20 ILCS 505/5 and 705 ILCS 5/2-13.1 which prevents the removal of minors from Avangelina Cazares and Josue Turcios's custody absent imminent risk of harm. Reasonable efforts also known as "family preservation services" are to be provided to prevent the placement of children in substitute care when the children can be cared for at home. Services are voluntary to protect the liberty interests of the parents "Avangelina" and "Josue" the right of parents to be an active and integral part of their children's lives.

41. Avangelina Cazares and Josue Turcios contends that Sharon Richardson's subordinate, Halema Townsend violated Avangelina Cazares and Josue Turcios's federal rights and that Sharon Richardson should be liable for Halema Townsend's conduct. First, "Sharon" approved "Halema's" request to take protective custody. Second, "Sharon" had actual knowledge of "Halema's" violation of "Avangelina" and "Josue's" constitutional rights and acquiesced in that violation.

42. Marnita Martin Harris acted under color of state law. While acting under color of state law, Marnita Martin deprived Avangelina Cazares of a federal constitutional right to life, liberty, or property, without due process of law. "Marnita" acted under Illinois state law 325 ILCS 5, 20 ILCS 505/5 and 705 ILCS 405 which prevents the removal of minors from Avangelina Cazares and Josue Turcios's custody absent imminent risk of harm. Furthermore, "Avangelina" and "Josue are required to provided voluntary consent to a placement agreement in which neither of them agreed to. "Avangelina" and "Josue" have a fundamental right and liberty interest to direct care over their minors.

43. Avangelina Cazares and Josue Turcios contends that Charlotte Robinson subordinate, Sharon Richardson violated Avangelina Cazares and Josue Turcios's federal rights and that Charlotte Robinson should be liable for Sharon Richardson's conduct. First, "Sharon" approved "Halema's" request to take protective custody. Second, "Charlotte" had actual knowledge of "Halema's" violation of "Avangelina" and "Josue's" constitutional rights and acquiesced in that violation. Third, "Charlotte" with deliberate indifference to the consequences, established and maintained a practice to remove minors because the parent's may voluntary decline preservation services absent an imminent risk of harm.

44. David Ruano acted under color of state law. While acting under color of state law, David Ruano deprived Avangelina Cazares and Josue Turcios of a federal constitutional right to life, liberty, or property, without due process of law. "David" acted under Illinois state law 325 ILCS 5/8.2, 20 ILCS 505/5 and 705 ILCS 405/2-13.1 which prevents the removal of minors from Avangelina Cazares and Josue Turcios's custody absent imminent risk of harm. Reasonable efforts also known as "family preservation services" are to be provided to prevent the placement of children in substitute care when the children can be cared for at home. Services are voluntary to protect the liberty interests of the parents "Avangelina" and "Josue" the right of parents to be an active and integral part of their children's lives.

45. Avangelina Cazares and Josue Turcios contends that Lisa Carswell's subordinate, David Ruano violated Avangelina Cazares and Josue Turcios's federal rights and that Sharon Richardson should be liable for David Ruano's conduct. First, "Lisa" approved "David's" request to take protective custody. Second, "Lisa" had actual knowledge of "David's" violation of "Avangelina" and "Josue's" constitutional rights and acquiesced in that violation.

46. Erick G. Gonzalez acted under color of state law. While acting under color of state law, Erick G. Gonzalez deprived Avangelina Cazares and Josue Turcios of a federal constitutional right

to life, liberty, or property, without due process of law. "Erick" acted under Illinois state law 20 ILCS 505/7 and 705 ILCS 405/2-13.1 which requires placement of the minors with relatives of Avangelina Cazares and Josue Turcios and the direction of the parents. "Erick" placed the minors in a non-relative home and did not provide notice to the parents. "Erick" also terminated "Avangelina's" visitation and without notification. "Avangelina" and "Josue" have the right to parent and be an active and integral part of their children's lives.

47. Avangelina Cazares and Josue Turcios contends that Kimberly Burris subordinate, Erick G. Gonzalez violated Avangelina Cazares and Josue Turcios's federal rights and that Kimberly Burris should be liable for Halema Townsend's conduct. First, "Kimberly" approved "Erick's" request to place minors in a non-relative home and cancel visitation. Second, "Kimberly" had actual knowledge of "Erick's" violation of "Avangelina" and "Josue's" constitutional rights and acquiesced in that violation.

48. Avangelina Cazares and Josue Turcios contends that Fayette Coleman-Gill's subordinate, Kimberly Burris violated Avangelina Cazares and Josue Turcios's federal rights and that Fayette Coleman-Gill should be liable for Kimberly Burris's conduct. First, "Kimberly" approved "Erick's" request to place the minors in a non-relative home and cancel "Avangelina's" visitation. Second, "Fayette" had actual knowledge of "Erick's" violation of "Avangelina" and "Josue's" constitutional rights and acquiesced in that violation. Third, "Fayette" with deliberate indifference to the consequences, established and maintained a practice to place minors in a non-relative home and cancel visitation.

49. John L. Huff acted under color of state law. While acting under color of state law, John L. Huff deprived Avangelina Cazares and Josue Turcios of a federal constitutional right to life, liberty, or property, without due process of law. "John" acted under Illinois state law 705 ILCS 405 which prevents the removal of minors from Avangelina Cazares and Josue

Turcios's custody absent due process of the law. Summons via service of process is required for a notice of shelter care hearing and a petition for adjudication of wardship. Due process is necessary to protect the liberty interests of the parents "Avangelina" and "Josue" the right of parents to be an active and integral part of their children's lives. "Avangelina" and "Josue" were not legally summoned to state court for the child protection proceedings. Personal jurisdiction is required for prosecutorial and judicial immunity.

50. Sara B. Novy Culotta acted under color of state law. While acting under color of state law, Sara B. Novy deprived Avangelina Cazares and Josue Turcios of a federal constitutional right to life, liberty, or property, without due process of law. Sara B. Novy acted under Illinois state law 705 ILCS 405/2-13.1 which prevents the removal of minors from Avangelina Cazares and Josue Turcios's custody absent imminent risk of harm and requires the guardian ad litem to file a motion requesting a finding that reasonable efforts to reunify that minor with his or her parent or parents are no longer required and are to cease. The parents "Avangelina" and "Josue" have not; (i) had his or her parental rights to another child of the parent involuntarily terminated; or (ii) been convicted of: (A) first degree or second degree murder of another child of the parent; (B) attempt, conspiracy, to commit first degree or second degree murder of another child of the parent; (C) solicitation to commit first degree or second degree murder of another child of the parent; (D) Aggravated battery, aggravated battery of a child, or felony domestic battery, any of which has resulted in serious bodily injury to the minor or another child of the parent.

51. Avangelina Cazares and Josue Turcios contends that Charles P. Golbert's subordinate, Sara B. Novy Culotta violated Avangelina Cazares and Josue Turcios's federal rights and that Charles P. Golbert should be liable for Sara B. Novy Culotta's conduct. First, "Charles" is listed as the minor's public guardian and did not follow procedural due process to notify the

parents that reasonable efforts would be terminated or did he delegate to the guardian ad litem to file a motion to terminate reasonable efforts to initiate the removal of the minors from the parents' custody. Second, "Charles" had actual knowledge of "Sara's" violation of "Avangelina" and "Josue's" constitutional rights and acquiesced in that violation. Third, "Charles" with deliberate indifference to the consequences, established and maintained a practice to remove minors because the parent's may voluntary decline preservation services absent an imminent risk of harm.

52. Daniella Sailades acted under color of state law. While acting under color of state law, Daniella Sailades deprived Avangelina Cazares and Josue Turcios of a federal constitutional right to life, liberty, or property, without due process of law. "Daniella" acted under Illinois state law 705 ILCS 405 which prevents the removal of minors from Avangelina Cazares and Josue Turcios's custody absent due process of the law. Summons via service of process is required for a notice of shelter care hearing and a petition for adjudication of wardship. Due process is necessary to protect the liberty interests of the parents "Avangelina" and "Josue" the right of parents to be an active and integral part of their children's lives. "Avangelina" and "Josue" were not legally summoned to state court for the child protection proceedings. Personal jurisdiction is required for prosecutorial and judicial immunity.

53. Macarre Timuward acted under color of state law. While acting under color of state law, Macarre Timuward deprived Avangelina Cazares and Josue Turcios of a federal constitutional right to unlawful searches and seizures without due process of law. "Macarre" acted under Illinois state law 705 ILCS 405, 215 ILCS 97 and 405 ILCS 5/1-100 which requires all medical, mental health, and substance abuse records to be secured via a standard HIPPA qualified protective order under general administrative order 18-1. In fact, the Cook County general administrative order #1.2,2.2 only authorizes the child protection division to request

juvenile's records under color of state law where the minor was injured or harmed in some way. In fact, "Macarre" requested the medical records via a subpoena that was not mailed or given in any capacity to "Avangelina" or "Josue". Due process is necessary to protect persons from unreasonable government interference. Furthermore, "Avangelina" and "Josue" were not legally summoned to the child protection proceedings therefore the state court lacks personal jurisdiction over them. Personal jurisdiction is required for prosecutorial and judicial immunity.

54. Steve Rosenthal is not a state official. However, Josue Turcios alleges that Steve Rosenthal acted under color of state law by conspiring with one or more state officials to deprive "Josue" of a federal right. First, Steve Rosenthal agreed in some manner with Erick G. Gonzalez to do an act that deprived "Josue" of a federal constitutional right to life, liberty, or property, without due process of law. "Steve" recommended involuntary substance abuse treatment services services to be completed before "Josue" can have custody of his minor C.T. It is a fundamental liberty interest to care and protect for one's minor absent government interference and a liberty interest to be free from involuntary services.

55. Isamar Mendoza is not a state official. However, Avangelina Cazares alleges that Isamar Mendoza acted under color of state law by conspiring with one or more state officials to deprive "Avangelina" of a federal right. First, Isamar Mendoza agreed in some manner with Erick G. Gonzalez to do an act that deprived "Avangelina" of a federal constitutional right to life, liberty, or property, without due process of law. "Isamar" recommended several involuntary reunification services to be completed before "Avangelina" can have visitation with her children. "Isamar" labelled "Avangelina" as risk of harm to the minors. Second, "Isamar" engaged in at least one act in furtherance of the conspiracy. "Isamar" alleged that "Avangelina" needs psychiatric medical care and referred her to see a psychiatrist at

Advocate Illinois Masonic Behavioral Health. "Isamar" is a licensed clinical social worker in the state of Illinois and is not a licensed medical doctor, therefore is not licensed to order patients to be seen at Advocate Illinois Masonic Behavioral Health. Furthermore, several Illinois state statues 405 ILCS 5/3-700, 405 ILCS 5/4-306 and 405 ILCS 5/4-500 require a person with a mental illness who poses a "direct threat" in society to be treated on an inpatient basis involuntarily and requires due process of law. "Avangelina" also has the fundamental right to non-consensual medical treatment and experimentation. "Isamar" is illegally practicing medicine and works with children at La Rabida's Children's Hospital.

56. Gloria Johnson is not a state official. However, Avangelina Cazares alleges that Gloria Johnson acted under color of state law by conspiring with one or more state officials to deprive "Avangelina" of a federal right. First, Gloria Johnson agreed in some manner with Erick G. Gonzalez to do an act that deprived "Avangelina" of a federal constitutional right to life, liberty, or property, without due process of law. "Gloria" recommended involuntary termination of digital media contact via a video conference at a visitation with "Josue" and C.T. It is a fundamental liberty interest to care and protect for one's minor absent government interference.

57. LaShawnda Bishop is not a state official. However, Avangelina Cazares alleges that LaShawnda Bishop acted under color of state law by conspiring with one or more state officials to deprive "Avangelina" of a federal right. First, LaShawnda Bishiop agreed in some manner with Halema Townsend to do an act that deprived "Avangelina" of a federal constitutional right to life, liberty, or property, without due process of law. "LaShawnda" recommended the minors P.T. and A.T. be taken and removed from the custody of "Avangelina" without a physical court order, warrant or imminent harm.

## VII. STATEMENTS OF CLAIMS FOR RELIEF

### A. FIRST CLAIM FOR RELIEF: U.S.C. §§ 1983 VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE [ALL DEFENDANTS]

58. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 57, above.

59. As a direct, legal and proximate result of the constitutional violations, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

60. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from unnecessary government interference.

61. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

### B. SECOND CLAIM FOR RELIEF: U.S.C. §§ 1983 VIOLATION OF THE FOURTH AMENDMENT [ALL DEFENDANTS]

62. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 61, above.

63. As a direct, legal and proximate result of the constitutional violations, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

64. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from unnecessary government interference.

65. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

### C. THIRD CLAIM FOR RELIEF: U.S.C. §§ 1983 VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS CLAUSES [ALL DEFENDANTS]

66. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in

paragraphs 1 through 65, above.

67. As a direct, legal and proximate result of the constitutional violations, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

68. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from unnecessary government interference.

69. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

### D. FOURTH CLAIM FOR RELIEF: U.S.C. §§ 1983 VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS [ALL DEFENDANTS]

70. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 69, above.

71. As a direct, legal and proximate result of the constitutional violations, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

72. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from unnecessary government interference.

73. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

### E. FIFTH CLAIM FOR RELIEF: U.S.C. §§ 1983 CONSPIRACY TO VIOLATE CIVIL RIGHTS [ALL DEFENDANTS]

74. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 73, above.

75. As a direct, legal and proximate result of the constitutional violations, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

76. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from unnecessary government interference.

77. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

### VIII. DECLATORY RELIEF ALLEGATIONS

78. A present and actual controversy exists between Plaintiffs and Defendants concerning their rights and respective duties

79. Plaintiffs contend Defendants violated their rights. Declaratory relief is therefore necessary and appropriate.

### IX. INJUCTIVE RELIEF ALLEGATIONS

80. No plain, adequate, or complete remedy at law is available to Plaintiffs to redress the wrongs addressed herein.

81. If this Court does not grant the injunctive relief sought herein, Plaintiffs will be irreparably harmed.

### X. DEMAND FOR A JURY TRIAL

82. Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

### XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiffs' emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For treble damages in the amount to be determined at trial;

6. For interest on lost wages, compensation, and damages;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit;

9. For such other and further relief as this Court deems just and proper.

## XII. CERTIFICATE AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this pleading: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. PARTIES WITHOUT AN ATTORNEY

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

### B. SIGNATURES

Date of signing: 01/17/2020

Signature of Plaintiff: *Avangelina Cazares*
Printed Name of Plaintiff: Avangelina V. Cazares

Date of signing: 01/17/2020

Signature of Plaintiff: *[signature]*
Printed Name of Plaintiff: Josue Turcios

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS   20